**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DEVIN GRAY,

Petitioner,

- v -                                              9:20-CV-1308
                                                        (BKS/DJS)

SUPERINTENDENT, CLINTON CORRECTIONAL
FACILITY[1],

Respondent.

**APPEARANCES:**                          **OF COUNSEL:**

Devin Gray
Petitioner *Pro Se*
15-A-1014
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

HON. LETITIA JAMES                    PRISCILLA STEWARD, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] The Clerk is directed to update the Court docket to name the Superintendent of Petitioner's present place of incarceration as Respondent since "the proper respondent in a habeas corpus petition is the officer having custody of the applicant." *Perich v. Mazzuca*, 2007 WL 2455136, at *1 (E.D.N.Y. Aug. 23, 2007) (citing Rules Governing Section 2254 Cases in the United States District Courts). Petitioner's request to note his change of address and amend the caption is granted. *See* Dkt. No. 40.

## REPORT-RECOMMENDATION and ORDER[2]

*Pro se* Petitioner Devin Gray was convicted following a jury trial of second-degree criminal possession of a weapon and second-degree reckless endangerment.  Dkt. No. 1, Petition ("Pet.") at p. 1.[3]  He was sentenced to a term of imprisonment of fifteen years with five years of post-release supervision.  *Id.*; Dkt. No. 14, State Court Record ("SR.") at p. 6.[4]  Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on six grounds: (1) the People failed to prove that the "rifle" was a "semiautomatic" weapon; (2) the trial court failed to instruct the jury on all the elements of criminal possession of a weapon; (3) the conviction violated his Second Amendment rights; (4) the evidence seized was a violation of his Fourth Amendment rights; (5) he was denied the effective assistance of trial counsel; and (6) he was denied effective assistance of appellate counsel.  Pet.; Dkt. No. 1-1, Memorandum of Law ("Pet. Mem.") at p. 2–3.[5] Respondent has filed a Memorandum of Law in Opposition to the Petition.  Dkt. No. 13-1, Resp. Mem.   For the reasons that follow, this Court recommends that the Petition be **denied.**

---

[2] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] Citations to the Petition are to the page numbers assigned by the Court's CM/ECF system.

[4] Citation to the state court record is in the form "SR." followed the page numbering provided by Respondent.

[5] Citations to the Petitioner's Memorandum of Law is in the form of "Pet. Mem." followed by the page numbers assigned by the Court's CM/ECF system.

## I. BACKGROUND

On June 24, 2014, Petitioner was named in a four-count Indictment charging him with three-counts of criminal possession of a weapon in the second degree and one count of reckless endangerment in the first degree. SR. at 22-24. On June 3, 2014, police officers responded to a dispatch call regarding "shots fired." Upon responding, some officers noticed a car driving at high speed away from the area, and proceeded to pull the car over. SR. at 185-87. Inside the car was Petitioner, who had been shot, and a driver. SR. at 187-88. Petitioner was brought to the hospital. SR. at 190, 198-99. At the scene, officers located a firearm, allegedly belonging to Petitioner, inside an apartment where Petitioner had been earlier that night. SR. at 199-201. Prior to the shooting, Petitioner and another individual exchanged obscenities nearby the apartment complex. SR. at 262-64. This dispute escalated, to resulting in a showdown between Petitioner and the other individual. SR. at 268-78. Petitioner was armed with a 9-millimeter rifle, and the other individual was armed with a 12-gauge shotgun. SR. at 276-77, 289-90, 301-02, 305-07. While Petitioner was the only one who sustained injuries, both Petitioner and the other individual fired shots, and afterwards, Petitioner ran into one of the apartments, leaving his weapon there before being driven away where he was subsequently apprehended. SR. at 187-88, 310-13, 316-20.

After Petitioner was indicted, he was arraigned in Ulster County Court on June 27, 2014. SR. at 46, 174-77. Petitioner pled not guilty to all counts. SR. at 175. Ulster County Court held a suppression hearing prior to trial on November 10, 2014. SR. at 179-237. The trial started on December 8, 2014 and lasted until December 12, 2014. SR.

at 240-674; *see also* Dkt. No. 14-1.  The jury returned a guilty verdict.  SR. at 160 & 170.

Sentencing occurred on February 27, 2015, at which Petitioner was sentenced to 15 years

of imprisonment, followed by 5 years post-release supervision.  SR. at 675-89.

Petitioner appealed to the New York Appellate Division, Third Department, who

entered its decision on June 29, 2017.  SR. at 690–97.  The Appellate Division affirmed

the judgment of conviction, finding that defendant's arguments were all "lacking in

merit."  *People v. Gray*, 151 A.D.3d 1470, 1476 (3d Dep't 2017).  The New York Court

of Appeals denied leave to appeal.  30 N.Y.3d 949 (2017).

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

Petitioner bears the burden of proving by a preponderance of the evidence that he is "in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003

WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003).  A federal court may not grant *habeas*

relief to a state prisoner on a claim unless the state court adjudicated the merits of the

claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review

under AEDPA as follows:

4

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108–09 (2d Cir. 2000)).  The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  AEDPA also requires that "a determination of a factual issue made by a State

court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### III. DISCUSSION

#### A. Sufficiency of the Evidence

Petitioner's first claim is that the prosecution failed to prove an essential element of the weapons charge, namely that Petitioner possessed a "semiautomatic" weapon. Pet. at p. 8; Pet. Mem. at pp. 32-41.

In a sufficiency of the evidence claim, a reviewing court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Musacchio v. United States*, 577 U.S. 237, 243 (2016). Therefore, a habeas court may only overturn a conviction if, based upon the evidence presented at trial, "*no* rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt." *Hogan v. West*, 448 F.Supp.2d 496, 512 (W.D.N.Y. 2006) (emphasis in original). On habeas review, a federal court can only overturn a state court decision if such decision was "objectively unreasonable." *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011); *Renico v. Lett*, 559 U.S. 766, 773 (2010). Further, courts defer to the jury's assessment as to credibility and conflicting testimony. *Parisi v. Burge*, 2007 WL 496463, at *1 (N.D.N.Y. Feb. 12, 2007). As such, a petitioner bears a heavy

burden when challenging how sufficient the evidence was which supported the criminal conviction. *Jones v. Conway*, 2008 WL 904899, at *7 (N.D.N.Y. Mar. 31, 2008).

The firearms statute on which Petitioner was convicted is N.Y. Penal Law § 265.03, Criminal Possession of a Weapon in the Second Degree. Pet. at p. 1; *see also* SR. at pp. 160 & 170. N.Y. Penal Law § 265.03(3) involves possession of a "loaded firearm." Loaded firearm is defined further, in N.Y. Penal Law § 265.00(15) as "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm." A "firearm" is defined in N.Y. Penal Law § 265.00(3)(e) to include "an assault weapon" which is, as relevant here, "a semiautomatic rifle that has an ability to accept a detachable magazine and has . . . a pistol grip that protrudes conspicuously beneath the action of the weapon." N.Y. Penal Law § 265.00(22)(a)(ii). Finally, semiautomatic "means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell. N.Y. Penal Law § 265.00(21).

The Appellate Division considered Petitioner's challenge to the evidence in detail and found that the evidence presented to the jury legally sufficient to establish Petitioner's guilt. *People v. Gray*, 151 A.D.3d at 1472-1475.[6] A reviewing court "will not disturb [a] verdict if there is substantial evidence to support it." *United States v. Yousef*, 327 F.3d

---

[6] The state court did find that a specific legal sufficiency challenge was not preserved for appellate review, but noted that "our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt." *People v. Gray*, 151 A.D.3d at 1472 (citation omitted).

56, 134 (2d Cir. 2003) (citing cases).  Here, there was testimony, which a jury could credit, to support each element of the weapons charge.

To prove that these elements were met at the trial level, the prosecution called witnesses who identified Petitioner as the individual who possessed and fired the weapon. *See, e.g.*, SR. at 302 ("[Defendant] was pointing the gun at me.  Basically like if anyone moved I was going to be the one to get shot, which he did shoot at me.").  Testimony was taken regarding the acquisition of the weapon, a 9-millimeter carbine rifle.  SR. at 317, 321-22, 331-32, 337.  There was also testimony that the rifle exhibited the characteristics supplied by the statute, including a pistol grip protruding below the stock, and a detachable magazine.  *See* SR. at 355-56.  The magazine held ten rounds and each pull of the trigger would send a bullet down the barrel and another round would be injected into the weapon from the magazine.  *See* SR. at 357.  The jury also was told about the manner in which rounds of ammunition were advanced from the machine to the weapon when Officer Zell testified about how the design of the gun moved rounds of ammunition.  SR. at 695.  The jury heard further testimony that the weapon had been successfully test-fired and was operational.  SR. at 358-60 (detailing the method of test-firing the weapon and its successful operation).

Petitioner identifies three reasons for his argued finding: that "(1) [t]he weapon as designed does not meet the statutory definition of an 'assault weapon;' (2) [t]he weapon in its condition . . . was not a 'repeating' rifle; and (3) [t]he weapon in its condition . . . could only be 'manually operated by bolt action.'"  Pet. Mem. at p. 35.  The Appellate Division noted that these arguments were premised on a misreading of the statute,

focusing on the use of a spring to chamber another round when instead the statute "refers to the weapon's design and capabilities - not the specific manner in which it was operated at a particular point in time." *People v. Gray*, 151 A.D.3d at 1473.  On habeas review, this Court must "defer to the state court's interpretation of its own law." *Vasquez v. Poole*, 331 F. Supp. 2d 145, 165 (E.D.N.Y. 2004).  Therefore, Petitioner has not met the "heavy burden" of showing that the evidence to support his conviction was insufficient; and this court, as it must, defers to the reasonable judgment of the triers of fact in this matter. *Jackson v. Virginia*, 443 U.S. at 319.  This ground for relief, therefore, should be denied.

**B. Jury Instructions on the Elements of Criminal Possession of a Weapon**

Petitioner next argues that the instructions given to the jury failed to provide all the necessary legal definitions, rendering those instructions constitutionally deficient. Pet. Mem. at pp. 42-45.

First, the Court notes that this claim is barred by the independent and adequate state ground doctrine.  Under this doctrine, "[the] Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  New York's preservation rule, requiring a "contemporaneous objection to any alleged legal error by defense counsel at a criminal trial" is a state law ground independent of the federal question presented here. N.Y. Crim. Proc. Law § 470.05(2) (McKinney 2021); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007).  The New York Court of Appeals has determined that the preservation rule "require[s], at the very least, that any matter which a party wishes the

appellate court decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) (alteration in original) (quoting *People v. Luperon*, 85 N.Y.2d 71, 78 (1995)) (internal quotation marks omitted). Not only is the preservation rule codified, but it is recognized and adhered to by New York and federal courts. *See Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("We have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule.").

Petitioner claims here that the state trial court erred when it failed to give "the statutory definition of the term semiautomatic." Pet. at p. 11. The Appellate Division, however, specifically found that this issue was not preserved for review based on the failure to object to the instructions at the time of trial. *People v. Gray*, 151 A.D.3d at 1475. Courts in the Second Circuit routinely find that the failure to comply with this contemporaneous objection rule is an independent and adequate state ground that bars consideration of the habeas claim on the merits. *Smith v. Capra*, 2013 WL 6501693, at *10 (S.D.N.Y. Dec. 11, 2013); *Eugene v. Payant*, 2007 WL 2116375, at *3 (E.D.N.Y. July 13, 2007) (citing cases). "Failure to object to the jury charge or ask for [a specific instruction] at trial serves as an adequate and independent ground to support the Appellate Division's rejection of petitioner's claims, precluding them from habeas review." *Rios v. Miller*, 2015 WL 5123071, at *10 (S.D.N.Y. Sept. 1, 2015) (citing cases).

The claim is also without merit. The Supreme Court has held that claims of improper jury instructions, brought by a state prisoner, are met with a "substantial

burden." *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1973); *see also DelValle v. Armstrong*, 306 F.3d 1197, 1200-01 (2d Cir. 2002). A state trial court's jury instructions are ordinarily a matter of state law and do not raise a federal constitutional question. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (discussing deference to trial court jury instructions). "[T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147. Petitioner clearly cannot satisfy this standard since the state court found, despite the lack of preservation, that the trial court's "charge, taken as a whole, conveyed to the jury the correct standard." *People v. Gray*, 151 A.D.3d at 1475 (internal quotation omitted).

For these reasons, this ground for relief should be denied.

### C. Second Amendment

The Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The "Second Amendment right is fully applicable to the states" as the "Framers and ratifiers of the Fourteenth Amendment counted the right . . . among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010). Yet, this right does not convey an unabridged ability to carry any weapon, nor to carry a weapon for any purpose. *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Court has specifically stated that the Second Amendment right "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625.

Stated succinctly by Petitioner, his "Second Amendment argument is that, in the wake of recent cases such as *Caetano v. Massachusetts*, [577 U.S. 411 (2016)], New York's criminalization of 'assault rifle' possessing remains sustainable, if at all, only if the ban is limited to weapons that actually function as an 'assault rifle.'" Pet. Mem. at p. 47. Therefore, Petitioner concludes that "[t]he interpretation given New York statutes by the New York courts in this case impermissibly burdens the ownership and possession of weapons that are protected under the Second Amendment." *Id.*

Under AEDPA, the question is whether Petitioner's conviction violates clearly established law from the Supreme Court. 28 U.S.C. § 2254(d). No decision from that Court has established a right to possess an assault weapon. The state court affirmance of Petitioner's conviction, therefore, was not an unreasonable application of the Supreme Court's law in this area. *Jones v. Bermudez*, 2019 WL 2493539, at *9 (S.D.N.Y. Feb. 14, 2019), *report and recommendation adopted sub nom. Jones v. Burmudez*, 2019 WL 1416985 (S.D.N.Y. Mar. 29, 2019).

Petitioner's Second Amendment claim, therefore, should be rejected.

### D. Fourth Amendment Rights

Petitioner next claims that evidence used against him was unlawfully obtained in violation of the Fourth Amendment. Pet. at pp. 15-16. This claim is not a basis for relief.

Any challenge to the admissibility of evidence is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an

illegal search or seizure was introduced at trial. *Id.* at 482. "The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed." *Collier v. Superintendent, Coxsackie Corr. Facility*, 2020 WL 2341062, at *11 (N.D.N.Y. May 11, 2020) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983)).

The Second Circuit "has made clear that a fourth amendment claim may not be considered by a federal habeas corpus court if the state has provided an opportunity fully and fairly to litigate it." *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983). To obtain relief on a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that Petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. "It is well-settled that New York State provides for a full and fair opportunity to litigate a Fourth Amendment claim." *Evans v. Giambruno*, 2000 WL 1876642, at *1 (S.D.N.Y. Dec. 26, 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991)). And the record reflects that Petitioner took advantage of his opportunity to fully adjudicate the matter in state court. *See generally* SR at 34-41. Nor has he alleged the sort of

13

unconscionable breakdown that clearly established law requires.  *See* Pet. Mem. at pp. 48-51.

Petitioner is therefore not entitled to habeas corpus relief on his claim of an unlawful seizure and search.

## E. Ineffective Assistance of Counsel

Petitioner's fifth and sixth claims for relief allege that trial and appellate counsel provided him constitutionally ineffective assistance.  Pet. at pp. 18-24.  Upon review of the record, neither claim merits relief.

The Supreme Court, in *Strickland v. Washington*, set the standard for ineffective assistance of counsel, where it was required to consider if the Constitution demanded that a criminal defendant's conviction must be "set aside because counsel's assistance at trial or sentencing was ineffective."  466 U.S. 668, 671 (1984).  The requirements for such a claim are that "[t]he defendant must show that there is a reasonable probability that, *but for counsel's unprofessional errors*, the result of the proceeding would have been different."  *Id.* at 694 (emphasis added).  Further, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."  *Id.* at 695.  The *Strickland* decision set forth two specific criteria:  first, the defendant must show that his attorney's actions "were outside the wide range of professionally competent assistance," rather than potentially strategic decisions.  *Id.* at 690–91.  Second, it must be shown that these actions had an "effect on the judgment."  *Id.*

The first prong of the *Strickland* analysis "is necessarily linked to the practice and expectations of the legal community," to which the Court has "long recognized that '[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . .'" *Padilla v. Kentucky*, 559 U.S. 356, 366–67 (2010) (quoting *Strickland v. Washington*, 466 U.S. at 688) (collecting cases). Such guides are important measures of the legal community and the "prevailing professional norms" of what is effective representation, to compare against what is not. *See id.* at 367. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance, and [the Court has] held that a lawyer's violation of ethical norms does not make the lawyer *per se* ineffective." *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (citing *Mickens v. Taylor*, 535 U.S. 162, 171 (2002)); *see also Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Therefore, it follows that the Petitioner must demonstrate that his counsel's errors were such that counsel was effectively unreasonable. *See Harrington v. Richter*, 562 U.S. at 104 ("The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" (quoting *Strickland v. Washington*, 466 U.S. at 687)).

The second prong of the *Strickland* analysis requires that the challenger shows that "[c]ounsel's errors [were] 'so serious as to deprive the defendant a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. at 687). This standard is high, and high for a reason as such claims "can function as a way to escape rules . . .

15

and raise issues not presented at trial." *Id.*; *see also Padilla v. Kentucky*, 559 U.S. at 357 ("Surmounting *Strickland*'s high bar is never an easy task.").  The standard "must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the vary adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. at 105 (quoting *Strickland v. Washington*, 466 U.S. at 689-90).  "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. at 8 (citing *Strickland v. Washington*, 466 U.S. at 690).  This "presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" *Id.* (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).  "After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better." *Harrington v. Richter*, 562 U.S. at 109.  This prejudice prong does not ask "whether it is possible a reasonable doubt might have been established if counsel acted differently[;]" instead, "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id.* at 111–12 (internal citations omitted) (first citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009); and then quoting *Strickland v. Washington*, 466 U.S. at 696).  "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112 (citing *Strickland v. Washington*, 466 U.S. at 693).

*1. Trial Counsel*

Petitioner argues first that trial counsel was ineffective in not seeking dismissal of charges related to the nature of the weapon.  Pet. Mem. at pp. 58-60.  Petitioner specifically argues that this claim relates to the legal sufficiency argument raised above.  *Id.* at p. 60.  His second and third claims of ineffective assistance involve the related issue of the sufficiency of the jury instructions regarding the weapon.  *Id.* at pp. 60-64.  The Appellate Division found that Petitioner's legal sufficiency claim lacked merit, *People v. Gray*, 151 A.D.3d at 1473-1475, and as discussed above that claim is not a basis for habeas relief.  *See* Point III(A) *supra*.  The Appellate Division also found no error in the jury instructions.  *People v. Gray*, 151 A.D.3d at 1475.  That claim is also not basis for habeas relief.  *See* Point III(B) *supra*.  Trial counsel cannot be held to have been constitutionally ineffective for not raising issues which lack merit.  *Hall v. Lee*, 2016 WL 4597624, at *5 (S.D.N.Y. Sept. 1, 2016); *Hayes v. Lee*, 2015 WL 5943677, at *36 (S.D.N.Y. Oct. 13, 2015) (citing cases).

Next, Petitioner argues that trial counsel was ineffective in not requesting a missing witness charge concerning the failure of the prosecution to call Kerrie Fitzgerald as a witness.  Pet. Mem. at pp. 64-65.  He makes a related argument regarding the failure to object to trial testimony regarding Fitzgerald's consent to search as hearsay.  *Id.* at pp. 65-66.

The missing witness instruction claim is also not a basis for habeas relief.  First, "the failure to provide a missing witness charge in accordance with New York law is a matter of state law for which habeas relief is unavailable."  *Bisnauth v. Morton*, , 2021

WL 3492746, at *14 (E.D.N.Y. Aug. 9, 2021).  Second, "[w]here, as here, the alleged error is one of omission, it 'is less likely to be prejudicial than a misstatement of the law,' thereby making the petitioner's 'burden . . . especially heavy.'" *Crews v. Herbert*, 586 F. Supp. 2d 108, 114 (W.D.N.Y. 2008) (quoting *Henderson v. Kibbe*, 431 U.S. at 155).  In New York, the party seeking a missing witness charge must show that "the uncalled witness is knowledgeable about a material issue upon which the evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party." *People v. Gonzalez*, 68 N.Y.2d 424, 427 (1986).  The prosecution offered multiple witnesses who testified about Petitioner's possession of the firearm in question. Petitioner has not made any showing that Fitzgerald would have offered non-cumulative testimony on that issue which also precludes relief.  *Bisnauth v. Morton*, 2021 WL 3492746, at *15.

Even assuming that there was hearsay testimony regarding Fitzgerald's consent to search, which is far from clear in the record, *see* SR. at 316, the claim that counsel failed to raise a single hearsay objection is not a basis for relief.  To establish an ineffective assistance claim, a party must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 688.  It is unusual, therefore, to find a situation where a single error can establish deficient performance; such an error would need to be "egregious and prejudicial." *Harrington v. Richter*, 562 U.S. at 111.  The "failure to object to . . . hearsay is not an unusual mistake for an attorney." *Jelinek v. Costello*, 247 F. Supp. 2d 212, 283 (E.D.N.Y. 2003).

Finally, Petitioner argues that his counsel's "failure to object to [the] trial court's failure to rule on [his] motion for a trial order of dismissal" rose to the level of ineffectiveness. *See* Pet. Mem. at p. 66–67. After the prosecution rested, Petitioner's counsel moved for a "trial order of dismissal" arguing that the prosecution "failed to establish the necessary elements in each and every count." SR. at 395-96. As evidenced by the record, this motion was denied. *See* SR. at 396-98 & 405-408. Petitioner's claim, therefore, is belied by the factual record.

Absent any showing that conduct by Petitioner's trial counsel was unreasonable for an attorney in such a position, and that such conduct rose to the level proscribed by *Strickland*, Petitioner's claim of ineffective assistance of counsel must fail.

*2. Appellate Counsel*

While the Supreme Court has stated that "[t]here is . . . no constitutional right to an appeal" it has also held "that a state must provide counsel for an indigent appellant on his first appeal as of right." *Jones v. Barnes*, 463 U.S. 745, 751 (1983. The *Strickland* analysis and standard is applicable to appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[T]he *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, [and] the same test is used with respect to appellate counsel.").

Petitioner claims that his appellate counsel was ineffective because counsel failed to raise "the issue of Petitioner being denied his right to effective assistance of trial counsel" during Petitioner's direct appeal. *See* Pet. Mem. at pp. 52-56. Specifically, Petitioner contends that appellate counsel should have raised claims that trial counsel

erred with respect to the elements of the charge, related both to the sufficiency of the evidence and the jury instructions, *id.* at pp. 53-54, and the related question of seeking dismissal of the charges. *Id.* at p. 55. As discussed in the preceding section, trial counsel's performance with respect to none of these issues was constitutionally deficient and so appellate counsel had no basis, factual or legal, for pursuing an ineffectiveness claim on this ground. It is not enough to argue that appellate counsel omitted some arguments. Instead, it must be shown that strong arguments were omitted in favor of weaker ones. *See Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). Petitioner's claim lacks any showing that the arguments appellate counsel made were substantially weaker than that of ineffective assistance of trial counsel. Without such evidence Petitioner's claim must fail.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[7] and it is

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

**ORDERED**, that the request to note Petitioner's change of address and amend the caption is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  November 28 2023
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge